# BLYTHE *v.* HINCKLEY.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 347. Submitted January 14, 1901.—Decided February 25, 1901.

The motion to dismiss this case for lack of jurisdiction must be denied, because the question was duly raised, and its Federal character cannot be disputed; but the motion to affirm is granted, because the assignments of error are frivolous and evidently taken only for delay.

THIS case comes here on writ of error to the Supreme Court of California to review the judgment of that court affirming a judgment of the Superior Court of California for the county of San Francisco sustaining a demurrer to the complaint. The case involves a large amount of real property belonging in his lifetime to one Thomas H. Blythe, who was a naturalized citizen of the United States, and died intestate on the 4th of April, 1883, a resident of the city and county of San Francisco. Questions relating to the title to this property have been in litigation for over fifteen years, and various suits have been instituted in the state and Federal courts in California during that time, all of which have resulted favorably to the interests of the defendant in error herein, who claims to be the owner of the property. Three suits have been before this court upon a writ of error or by appeals brought by some of the parties interested, and have been dismissed for want of jurisdiction. *Blythe* v. *Hinckley,* 167 U. S. 746; *Blythe Company* v. *Blythe,* 172 U. S. 644; *Blythe* v. *Hinckley,* 173 U. S. 501.

The sole question which plaintiff in error herein seeks to have decided is whether the defendant in error was capable of taking the property of the intestate under the laws of California, the plaintiff in error claiming as one of the next of kin and heirs at law of the intestate, and objecting that the defendant in error could not take the property because she was an alien and a subject of the Queen of the United Kingdom of Great Britain and Ireland at the time of the death of the intestate,

and that in the absence of a treaty between the United States and Great Britain, permitting and providing for such taking on the part of an alien, there was no power in the State of California to legislate upon the subject, and the statute of that State assuming to permit such alien to take was a violation of that part of section 10 of article 1 of the Constitution of the United States, which provides that "no State shall enter into any treaty, alliance or confederation; . . ." and the attempt of the State of California to legislate upon this subject was therefore an invasion of and an encroachment upon the treaty-making power of the United States.

The facts upon which the question arises are set forth in the complaint, which stated in substance that the defendant in error was an alien and illegitimate daughter of an unmarried woman, and that prior to the death of the intestate neither the defendant nor her mother had ever been outside of Great Britain, and that she was incapable by the common law of England and of California and by the Constitution of the United States, section 10, article 1, and by section 1928 of the Revised Statutes, of inheriting the real property described in the complaint; that there was at the time of the death of the intestate no treaty between the United States and Great Britain which provided for the inheritance of aliens in the United States. After the death of the intestate the defendant in error came to the United States and claimed (falsely as alleged,) that she had been adopted by the intestate as his daughter in his lifetime under the provisions of section 230, Civil Code of California; also that he had adopted her as his heir under the provisions of section 1387 of that Code. Some time in 1885 she therefore instituted by her guardian, under section 1664 of the same Code, a proceeding for the purpose of establishing her claim as such adopted daughter or as such heir to succeed to the estate left by the intestate. Upon the trial it was made to appear that the defendant in error was an illegitimate child and an alien, and the complaint herein then alleges that it was the duty of the court before which the trial was going on to dismiss the proceeding for want of jurisdiction to decree that defendant in error was an heir to the real estate or capable of

taking by descent. The court, however, as the complaint alleged, decided otherwise, and upon the evidence determined and adjudged that the defendant was the natural heir of the intestate and that in his lifetime he had adopted her as his daughter under section 230 of the California Civil Code, or had instituted her as his heir under section 1387 of that Code.

It was further alleged that the seventeenth section of article 1 of the new constitution of California, permitting aliens to acquire, possess, enjoy, transmit and inherit property the same as native born citizens, was void as an attempt by the people of the State of California to encroach upon the treaty-making power of the United States, and was in violation of section 10 of article 1 of the Federal Constitution. It was then alleged that the court in the proceeding mentioned did not in legal effect determine the question of heirship, title or interest in the real estate for want of jurisdiction, and that the legislature of the State had no power or authority to enact any law which gave to the defendant in error the right to inherit the real estate of the intestate.

The complaint further stated that an appeal was taken to the Supreme Court of the State and that all of the above matters were made to appear to that court, which nevertheless affirmed the judgment. The same averments of the lack of jurisdiction to make such decree were made with regard to the Supreme Court as were set forth regarding the lower court, and the plaintiff in error alleged that the judgment of the Supreme Court was void for lack of jurisdiction. It was also alleged that after this affirmance of the decree of the lower court, by which the rights of the defendant in error to take the property were formally determined, she instituted a proceeding pursuant to the provisions of the California Code, in the Superior Court in San Francisco, where the administration of the estate of the intestate was pending, to have distributed the estate of the intestate in accordance with the judgments of the Superior and the Supreme Courts in the proceeding already mentioned. This was opposed by the parties interested adversely to the defendant in error upon the same grounds which had been set up as a defence in the former suit. Upon the trial of the latter proceeding the

record in the former suit was offered in evidence and objected to as void for want of jurisdiction, but it was received by the court and held by it to be conclusive evidence of the rights of the parties, and the court then made a decree of distribution in favor of the defendant in error. An appeal was taken to the Supreme Court where the judgment was affirmed, although, as alleged, the court was without jurisdiction. Pursuant to that decree the defendant in error obtained possession of the real property in December, 1895.

It was further alleged that all the claims of the defendant in error to inherit or to hold the real property were groundless and unfounded in fact or in law, and judgment was asked declaring the claims of the defendant to any of the property to be illegal and unfounded, and that plaintiff, as against her, was the lawful owner in fee of the real property mentioned, and was entitled to the income and profits thereof, and decreeing that his title thereto and estate therein should be quieted and the defendant perpetually enjoined from setting up any claim whatever to the property, and that the possession and accumulated rents of the property in the hands of the receiver be delivered to the plaintiff.

The portions of the Federal and state constitutions and the various statutes referred to in the complaint are set forth in the margin.[1]

---

[1] Section 10, article 1, of the Federal Constitution:

"No State shall enter into any treaty, alliance or confederation; . . ."
Section 1, article 2:

"No State shall, without the consent of the Congress, . . . enter into any agreement or compact with another State or with a foreign power. . . ."

Section 17 of article 1 of the constitution of California:

"Foreigners of the white race or of African descent eligible to become citizens of the United States under the naturalization laws thereof, while *bona fide* residents of this State, shall have the same rights in respect to the acquisition, possession, enjoyment, transmission and inheritance of property as native-born citizens."

Civil Code of California:

"SEC. 230. The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate

Opinion of the Court.

The defendant demurred to this complaint on the grounds, among others, (1) that the complaint stated no cause of action; (2) that the judgment of distribution set forth in the complaint was a conclusive bar and estoppel against the plaintiff and prevented him from maintaining the action. The demurrer was sustained and judgment entered in favor of the defendant on the merits, and upon appeal it was affirmed by the Supreme Court of California. A writ of error has been allowed by the Chief Justice of the Supreme Court of that State. A motion is now made to dismiss the writ of error for lack of jurisdiction or to affirm the judgment.

*Mr. William H. H. Hart, Mr. Robert Y. Hayne* and *Mr. Frederic D. McKenney* for the motions.

*Mr. S. W. Holladay, Mr. E. Burke Holladay, Mr. Jefferson Chandler* and *Mr. L. D. McKisick* opposing.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The motion to dismiss the writ of error in this case, for lack of jurisdiction, must be denied.

The objections raised by the complaint to the validity of the judgments mentioned therein were that they were void for want

child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth."

"SEC. 671. Any person, whether citizen or alien, may take, hold and dispose of property, real or personal, within this State.

"SEC. 672. If a non-resident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred. The property in such case is disposed of as provided in Title VIII, Part III, Code of Civil Procedure."

"SEC. 1387. Every illegimate child is an heir of any person who, in writing signed in the presence of a competent witness, acknowledges himself to be the father of such child."

Revised Statutes of the United States:

"SEC. 1978. All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property."

of jurisdiction in the courts which rendered them over the questions decided, because of the provisions of the Federal Constitution above recited. Although the claim may not be well founded, the question, nevertheless, was duly raised, and its Federal character cannot be disputed. This necessitates the denial of the motion to dismiss.

But the motion to affirm should be granted because the assignments of error are frivolous and we are convinced the writ was taken only for delay. This is the ground for the decisions in *Chanute City* v. *Trader*, 132 U. S. 210, 214, and *Richardson* v. *Louisville & Nashville Railroad Co.*, 169 U. S. 128, 132.

The original judgment in the Superior Court of California, which was affirmed by the Supreme Court of that State, determined the rights of the defendant in error, and conclusively adjudged her to be the owner of the property in question, unless the judgment was reversed upon appeal. The state courts had jurisdiction over the whole question, including the defence founded upon the Federal Constitution, and if that objection had been properly raised, and appeared in the record, an appeal to this court from the Supreme Court of California could have been taken, if the defence had been overruled. The allegation of the plaintiff in error that the state courts had no jurisdiction to determine the question, because of the facts set forth by him in the complaint herein, is therefore not well founded, and being a mere conclusion of law is not admitted by the demurrer.

This court has already decided the question of jurisdiction of the state courts in *Blythe* v. *Hinckley*, 173 U. S. 501, 508, where it was said by Chief Justice Fuller, speaking for that court, that—

"The state courts had concurrent jurisdiction with the Circuit Courts of the United States, to pass on the Federal questions thus intimated, for the Constitution, laws and treaties of the United States are as much a part of the laws of every State as its own local laws and constitution, and if the state courts erred in judgment it was mere error, and not to be corrected through the medium of bills such as those under consideration."

If the Federal question which plaintiff in error claimed existed in the suits in the state court were not plainly enough presented

by him to those tribunals so as to permit of their review by this court, that is no answer to the proposition that those judgments are conclusive of the matters therein decided, unless reviewed by this court and reversed in a proper proceeding in error to the state court.

Litigation in regard to the merits of the claim of the defendant in error to this property has been continued by her opponents since the judgments of the state courts, just as if the whole merits of the case had not been decided by the state courts in her favor several times. This court has been asked to review a judgment dismissing the complaint filed in a separate action, brought in the Federal Circuit Court to set aside the state judgments, and this we refused to do on the grounds stated in the report. *Blythe* v. *Hinckley,* 173 U. S. *supra.* It was said in that case :

" The Superior Court of San Francisco was a court of general jurisdiction, and authorized to take original jurisdiction ' of all matters of probate,' and the bill averred that Thomas H. Blythe died a resident of the city and county of San Francisco, and left an estate therein ; and that court repeatedly decreed that Florence was the heir of Thomas H. Blythe, and its decrees were repeatedly affirmed by the Supreme Court of the State. So far as the construction of the state statute and state constitution in this behalf by the state courts was concerned, it was not the province of the Circuit Court to reëxamine their conclusions. As to the question of the capacity of an alien to inherit, that was necessarily involved in the determination by the decrees, that Florence did inherit, and that judgment covered the various objections in respect of section 1978 of the Revised Statutes, and the tenth section of article one of the Constitution of the United States, and any treaty relating to the subject."

In the same case it was said : " We are not to be understood as intimating in the least degree that the provisions of the California Code amounted to an invasion of the treaty-making power or were in conflict with the Constitution of the United States, or any treaty with the United States." This decision conclusively determined that the Superior Court of California and the Supreme Court of that State, upon appeal therefrom.

had full jurisdiction to determine the whole case and give the judgments that they have given. Notwithstanding which it is now again argued that those judgments were void for want of jurisdiction.

There must be an end to these claims at some time, and we think that this is a proper occasion to terminate them.

The sole question now remaining before us arises as to the claim made by plaintiff in error under the Constitution of the United States, already referred to, and although it was not in terms decided in the above case, we now say that the provision of the Federal Constitution had no bearing in this case, and that the question is, in our opinion, entirely free from doubt.

Plaintiff urges that never before has the question been directly passed upon by this court. If he means that it has never heretofore been asserted, that in the absence of any treaty whatever upon the subject, the State had no right to pass a law in regard to the inheritance of property within its borders by an alien, counsel may be correct. The absence of such a claim is not so extraordinary as is the claim itself.

Questions have arisen as to the rights of aliens to hold property in a State under treaties between this Government and foreign nations which distinctly provide for that right, and it has been said that in such case the right of aliens was governed by the treaty, and if that were in opposition to the law of the particular State where the property was situated, in such case the state law was suspended during the treaty or the term provided for therein. Counsel cite *Geofroy* v. *Riggs*, 133 U. S. 258, a case arising, and affecting lands, in the District of Columbia, in regard to which Congress has exclusive jurisdiction, and in that case Mr. Justice Field, in delivering the opinion of the court, said at page 266 :

"This article, by its terms, suspended, during the existence of the treaty, the provisions of the common law of Maryland and of the statutes of that State of 1780 and 1791, so far as they prevented citizens of France from taking by inheritance from citizens of the United States, property, real or personal, situated therein."

But there is no hint in that case that in the absence of any

treaty the State itself could not legislate upon the subject and permit aliens to hold property, real and personal, within its borders according to its own laws. This court has held from the earliest times in cases where there was no treaty that the laws of the State where the real property was situated governed the title and were conclusive in regard thereto.

The latest exposition of the rule is found in the case of *Clarke* v. *Clarke,* 178 U. S. 186. *De Vaughn* v. *Hutchinson,* 165 U. S. 566, 570, is another illustration of the same rule. The right of the State to make this determination by her own laws, in the absence of a treaty to the contrary, is distinctly recognized in *Chirac* v. *Chirac,* 2 Wheat. 259, 272, where the court said :

"John Baptiste Chirac having died seized in fee of the land in controversy ; his heirs at law being subjects of France ; and there being, at that time, no treaty in existence between the two nations ; did this land pass to these heirs, or did it become escheatable ? This question depends upon the law of Maryland."

In *Lessee of Levy* v. *McCartee,* 6 Pet. 102; the question was in regard to the law of New York and the right of an individual to inherit through an alien title to real estate in that State. Mr. Justice Story delivered the opinion of the court, in which he stated that the question resolved itself into "whether one citizen can inherit in the collateral line to another, when he must make his pedigree or title through a deceased alien ancestor. The question is one of purely local law, and, as such, must be decided by this court."

It was not claimed that the State of New York had no power to permit an inheritance through an alien or an inheritance by an alien himself of land situated in that State in the absence of a treaty upon the subject.

There has not been cited a single case where any doubt has been thrown upon the right of a State, in the absence of a treaty, to declare an alien capable of inheriting or taking property and holding the same within its borders. The treaties have always been for the purpose of enabling an alien to take even though the particular State may not have expressly permitted it. But no case has arisen where it was asserted or

claimed that a State in the absence of a treaty might not itself permit an alien to take property within its limits.

Again in *Hauenstein* v. *Lynham*, 100 U. S. 483, where the question depended upon a consideration of the treaty between the United States and the Swiss Confederation of November 25, 1850, it was said by Mr. Justice Swayne, in delivering the opinion of the court, that " The law of nations recognizes the liberty of every government to give to foreigners only such rights, touching immovable property within its territory, as it may see fit to concede. Vattel, book 2, c. 8, sec. 114. In our country, this authority is primarily in the States where the property is situated." And it is also said in that case, if a law of a State is contrary to a treaty, the treaty is superior under the Federal Constitution, but there is no intimation that when there is no treaty the right of the State does not exist in full force. The treaty, it will be observed, only permitted the alien to take the land, sell it and withdraw and export the proceeds thereof, but might take and hold the same as if he were a citizen on declaring his intention to reside in the State. See also *Hanrick* v. *Patrick*, 119 U. S. 156. The question of the extent of the power of the United States to provide by treaty for the inheriting by aliens, of real estate, in spite of the statutes of the State in which the land may be, does not arise in this case, and we express no opinion thereon.

The claim which the plaintiff in error founds upon the section of the Federal Constitution is too plainly without foundation to require further argument. The right of the defendant in error to this property has been in litigation for more than fifteen years, and many years after courts of competent jurisdiction have decided all the questions in her favor, and we think this writ of error, judging by the character of the question sought to be raised under it, has been taken for delay only. The judgment must be

*Affirmed.*