Ehrlich v. Weber.

RUDOLPH C. EHRLICH *v.* EMMA WEBER.

(*Jackson.*   April Term, 1905.)

1. **ALIENS.**  Their children born in this country are citizens of this country.

Children born of alien parents in this country and under its juris-
diction become at once, by virtue of such birth, citizens of the
United States.   (*Post, p.* 716.)

Cases cited and approved: United States v. Wong Kim Ark, 169
U. S., 649.

2. **SAME.**  Presumption that alienage continues.

The status of alienage of a foreigner is presumed to continue in
the absence of proof that he denationalized himself or ceased
to be a citizen of his native country, and the mere fact of long
residence in this country is not sufficient to overcome this pre-
sumption.   (*Post, pp.* 716, 717.)

Cases cited and approved: Hauenstein v. Lynham, 100 U. S., 483:
Green v. Salas (C. C.), 31 Fed., 107; Bode v. Trimmer, 82 Cal.,
517; State, ex rel., v. Boyd, 31 Neb., 730.

3. **SAME.**  Upon marriage of an alien woman to a citizen of this country, she and her minor children become citizens.

An alien woman otherwise eligible to citizenship here may be-
come a citizen by intermarrying with a citizen of this country,
and her minor child, of a former marriage, brought by her to
this country, and residing with her, will upon such marriage to
a citizen of this country, *ipso facto,* become also a citizen along
with his mother.   (*Post, p.* 717.)

Cases cited and approved: United States v. Kellar (C. C.), 13
Fed., 82; Kreitz v. Behrensmeyer (Ill.), 17 N. E., 232, 8 Am. St.
Rep., 349.

4. **EVIDENCE.** Incompetent admitted without objection must be considered.

Evidence admitted in the trial court without objection must be considered, although hearsay, or otherwise incompetent. (*Post, p.* 718.)

Cases cited: Groves v. Gordon, 3 Brev. (S. C.), 245; Schuster v. State, 80 Wis., 107; Lucas v. United States, 163 U. S., 612.

5. **ALIENS.** Where alien heirs cannot inherit the citizen heirs will take the whole inheritance.

Where some of the heirs are barred of an inheritance because of their alienage, the whole estate must go to the heirs who are citizens of this country and capable of taking the inheritance. (*Post, pp.* 718, 719.)

Case cited and approved: Orr v. Hodgson, 4 Wheat., 453.

6. **SAME.** Capacity to inherit depends upon statutes or treaties.

An alien has no inheritable blood, under the common law, and, if he take at all, he must do so under statutes of the State where the property is, or by the provisions of treaties. (*Post, p.* 719.)

Case cited and approved: Baker v. Shy, 9 Heis., 85.

7. **SAME.** Statutes on subject superseded by other statutes.

Sections 1998 to 2000, inclusive, of the Code of 1858, regulating the right of aliens to hold land by purchase or inheritance, are superseded or repealed by implication by Acts 1875, ch. 2, reproduced in Shannon's Code, as sections 3659 and 3660, on the same subject and providing that the heirs of an alien may take land by descent or otherwise as native citizens. (*Post, pp.* 719, 720, 725.)

8. **SAME.** Acts 1883, ch. 250, applies only where all the heirs are aliens.

Acts 1875, ch. 2 (Shannon's Code, sections 3559, 3660), providing that aliens may take and hold property, and that their heirs may take land by descent as native citizens, and Acts 1883, ch. 250 (Shannon's Code sections 3661, 3662), providing for the dis-

Ehrlich v. Weber.

tribution of property where the decedent's nearest of kin are aliens must be construed together; and said act of 1883, operating as a limitation upon the rights granted by said act of 1875, must be strictly construed, and so construed it applies only where all the heirs are aliens. (*Post, pp.* 719, 720, 725, 726.)

**9. TREATIES. Prevail over statutes of a state.**

In case of a conflict between the statute of a State and the terms of a treaty made under the authority of the United States, the treaty must prevail. (*Post, pp.* 723-725.)

Cases cited and approved: (Baker v. Shy, 9 Heis., 85; Hauenstein v. Lynham, 100 U. S., 483; Cooper, Ex parte, 143 U. S., 472; Whitney v. Robertson, 124 U. S., 190; United States v. Rauscher, 119 U. S., 407; Blythe v. Hinckly, 180 U. S., 333; Succession of Rabasse, 47 La. Ann., 1455; Opel v. Shoup, 100 Iowa, 424; Yeaker v. Yeaker, 4 Metc. (Ky.), 33; Succession of Rixer, 32 L. R. A., 177-189, note, 81 Am. Dec., 538, and note; Schultze v. Schultze (Ill.), 33 N. E., 201, 19 L. R. A., 90, 36 Am. St. Rep., 432; Kull v. Kull, 37 Hun, 476.

**10. SAME. Formal claim of rights under treaties need not be made in pleadings.**

Where a complainant based his claim upon the provisions of a treaty made under the authority of the United States, it is not necessary to make a formal claim of his rights under the treaty since such treaties are as much a part of the laws of every State as its own local laws and constitution. (*Post, pp.* 715, 716, 721, 722, 726.)

Cases cited and approved: Hauenstein v. Lynham, 100 U. S., 483; Blythe v. Hinckly, 173 U. S., 501, 508.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

STATEMENT OF FACTS MADE BY MR. JUSTICE NEIL.

This case involves a contest over the ownership and division of the estate of Adolph Weber, Jr., deceased.

The complainant was born in Leipsic, in the kingdom of Saxony, on the 9th day of September, 1860. Between the latter date and the year 1865 or 1866 his father, after cruelly treating his mother, Wilhelmina Ehrlich, deserted her and abandoned his family. The said Wilhelmina, after having secured a divorce from her husband, came to this country about the year 1866, bringing with her the complainant, then a child of about six years, and settled in Memphis, Tennessee with the purpose of making that city her future home.

During the year 1868 she intermarried with Adolph Weber, Sr., who was then residing in Memphis. He and his wife continued to reside there until his death, a few years later. Of this marriage were born in Memphis, Tennessee, the defendant, Emma Weber, and Adolph Weber, Jr. The latter died intestate in Memphis in the month of November, 1903, leaving a valuable estate, which is the subject of the present controversy. He was never married. Wilhelmina, the mother of the said Emma, Adolph, Jr., and of complainant, also resided in Memphis until her death in the year 1896.

Adolph Weber, Sr., was born in Stuttgart, in the kingdom of Wurttemberg. This is proved by statements, unobjected to in the court below, which defendant, Emma Weber, testified were made to her by her mother; al-

so by the testimony of Caroline Heinrichs, who deposed, also without objection, that Adolph Weber, Sr., told her that he came from Wurttemberg; also that she herself came from the same country, and that, on talking with him, she found that he knew the towns in that country with which she was familiar; also that he spoke the German language like a native, and that he spoke English brokenly. It is not proven that he ever obtained naturalization papers, or that he ever voted, sat on a jury, or exercised any other of the political rights of citizenship in this country.

The complainant has resided in this country since he came here with his mother in 1866—part of the time in this State, part in Nebraska, part in Illinois. It is not shown that he ever obtained naturalization papers, or that he ever exercised any of the political rights of citizenship in either of the States in which he had resided.

In the bill complainant describes himself as a "resident" of the State of Illinois. In the answer defendant averred that he was an alien, and insisted that he was for that reason not entitled to share in the estate of his half-brother, Adolph Weber, Jr. This appeared in the form of an amendment to the answer. On the same day the complainant was permitted to amend his bill so as to add the following to the prayer, viz.:

"And should it appear that complainant is mistaken in his belief that he is a citizen of the State of Illinois, or should it appear that he is not a citizen of the United States, but was at the time of the death of said brother

a citizen of any other foreign government, or subject of any foreign king or ruler or prince, then he prays that he have the benefit of any and all treaties or conventions with such state or government, king, ruler, or prince which may have been entered into between the United States and such foreign power touching the rights of aliens, and especially under the law of the land as proclaimed and established in the treaty with the king of Saxony of 1846, and with the king of Prussia of the year 1828, and duly ratified according to law by the United States."

The chancellor decreed that the complainant was entitled to an equal interest in the estate with his half-sister, defendant, Emma Weber. From this decree she has appealed and assigned errors.

R. B. GOODWIN, for complainant.

EDGINGTON & EDGINGTON, for defendant.

———

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

Regardless of whether the said Wilhelmina and her husband Adolph Weber, Sr., were aliens, their children, Emma and Adolph, Jr., having been born in this country and under its jurisdiction, became at once, by virtue of such birth, American citizens. *United States* v. *Wong Kim Ark*, 169 U. S., 649, 18 Sup. Ct., 456, 42 L. Ed., 890.

Rudolph C. Ehrlich, complainant, having been born

in a foreign country, and hence an alien, his status of alienage would be presumed to continue, in the absence of proof that he had denationalized himself or ceased to be a citizen of his native land, and the mere fact of long residence in this country would not be sufficient to overcome the presumption thus arising. *Hauenstein* v. *Lynham,* 100 U. S., 483, 25 L. Ed., 628; *Green* v. *Salas* (C. C.), 31 Fed., 107; *Bode* v. *Trimmer*, 82 Cal., 517, 23 Pac., 188; *State, ex rel. Thayer,* v. *Boyd,* 31 Neb., 730, 48 N. W., 753, 51 N. W., 602.

The same conclusion holds in respect of Adolph Weber, Sr., and of his wife, Wilhelmina. Hence, while it is true, as contended by complainant's counsel, that an alien woman, otherwise eligible to citizenship here, may become a citizen by intermarrying with a citizen of this country, and that her minor child, of a former marriage, brought by her to this country and residing with her, will, upon such marriage to a citizen of this country, *ipso facto,* become also a citizen along with his mother (*United States* v. *Kellar* (C. C.), 13 Fed., 82; *Kreitz* v. *Behrensmeyer* (Ill.), 17 N. E., 232, 8 Am. St. Rep., 349), there is nothing in this case upon which to rest such a conclusion in favor of the complainant. His mother was clearly not a citizen, aside from any consideration of her intermarriage with Adolph Weber, Sr., and that marriage did not confer citizenship upon her, for the reason that Adolph Weber, Sr., was not himself a citizen. The facts stated concerning his origin are sufficient to show that he was an alien. The testimony of Emma Weber

upon this subject, set out in the statement, would, no doubt, have been excluded in the court below, as pure hearsay, if a proper objection had been interposed; but there was no objection, and the evidence must be considered. The testimony of Mrs. Heinrichs as to the statements made to her by Adolph Weber, Sr., as to the place of his birth, should probably have been held competent, even if an exception had been interposed. *Groves* v. *Gordon*, 3 Brev. (S. C.), 245. But see *Schuster* v. *State*, 80 Wis., 107, 49 N. W., 30. We are referred to *Lucas* v. *United States*, 163 U. S., 612, 16 Sup. Ct., 1168, 48 L. Ed., 282, as a controlling authority against the admissibility of the evidence. It is, indeed, held in that case that such evidence would not be admissible for the purpose of sustaining the jurisdiction of the court in a criminal case; but it is conceded in the opinion that in a contest over property rights the admission of the deceased person as to his status "might be competent" against those claiming under him. At all events, this evidence must be allowed, no objection having been offered in the trial court. Considering together all of the facts recited upon this subject in the statement, we are of the opinion that they are sufficient to justify the conclusion that Adolph Weber, Sr., was an alien, and that he never became a citizen of this country.

If by reason of alienage the complainant be barred of the inheritance, the whole estate must go to defendant, Emma Weber, who is a citizen of this country, and cap-

able of taking the inheritance.  *Orr* v. *Hodgson*, 4 Wheat., 453, 4 L. Ed., 613.

An alien has no heritable blood under the common law, and, if he take at all, he must do so under statutes of the State where the property is, or by the provisions of treaties. *Baker* v. *Shy*, 9 Heisk., 85.

The statutes of this State bearing upon the question are the following, viz.:

Sections 1998, 1999, 2000, of the Code of 1858.

"Sec. 1998.  An alien may take and hold real estate in this State, by purchase, inheritance, or in any other way which may be agreed upon by treaty between the United States and the country of which he is a citizen or subject.

"Sec. 1999.  Any alien resident in this State, who has legally declared his intention, under the naturalization laws, to become a citizen of the United States, may take and hold, dispose of or transmit by descent, any real estate, as a native citizen.

"Sec. 2000.  An alien who is a resident in the United States at the time of the death of an intestate, and has declared, or shall within twelve months thereafter declare his intention, according to the acts of congress, to become, a citizen, shall be capable of inheriting the estate of such intestate."

Shannon's Code, sections 3659, 3660, containing the provisions of chapter 2, p. 4, Acts 1875:

"Sec. 3659.  Aliens to Hold and Dispose of Property. An alien, resident, or nonresident, may take and hold

property, real or personal, in this State, either by purchase, descent, or devise, and dispose of or transmit same by sale, descent, or devise, as a native citizen; and in all cases where aliens, resident or nonresident, have heretofore acquired title to property, real or personal, in this State, in a lawful manner, said aliens, their assigns, heirs, devisees, or representatives, shall hold and dispose of the same in the same manner as native citizens.

"Sec. 3660. Heirs of Aliens may Inherit. The heir or heirs of an alien, whether resident or nonresident of the United States, may take any lands, so held by descent, or otherwise, as citizens of the United States."

The act of 1883, p. 330, c. 250, viz.:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that hereafter when any person dies, a resident of this State, intestate and without issue, possessed of real or personal property, and when nearest of kin are aliens to the United States, the same shall be distributed as follows:

"First. By his brothers and sisters of the whole blood, born before his or her death, or afterwards, to be divided among them equally, and if any such brother or sister died in the intestate's lifetime, bearing issue, such issue shall represent their deceased parent, and be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to, if living. In default of brothers and sisters, or their issue, the said estate shall be inherited by the father and mother of the intestate equally; if both be dead, the

Ehrlich v. Weber.

equal moieties by the heirs of the father and mother, in equal degrees, or representing them in equal degrees of relationship to the intestate; but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood to the intestate shall take in preference to others more remote.

"Section 2. Be it further enacted, that any alien to whom property, personal or real, shall descend under the provisions of this act, shall have the right to hold, sell, alienate, and convey the same in as full and ample a manner as if he or she were a citizen of the United States."

The treaty provisions bearing upon the controversy are articles 2 and 3 of the treaty of May 4, 1845, ratified August 12, 1846, between the United States and the king of Saxony, viz. :

"Art. 2. Where, on the death of any person holding real property within the territories of one party, such real property would by the laws of the land descend on a citizen or subject of the other, were he not disqualified by alienage, or where such real property has been devised by last will and testament to such citizen or subject, he shall be allowed a term of two years from the death of such person—which term may be reasonably prolonged according to circumstances—to sell the same and to withdraw the proceeds thereof without molestation, and exempt from all duties of detraction on the part of the government of the respective states.

114 Tenn—46

"Art. 3. The citizens or subjects of each of the contracting parties shall have power to dispose of their personal property within the states of the other, by testament, donation, or otherwise; and their heirs, being citizens or subjects of the other contracting party, shall succeed to their said personal property, whether by testament or *ab intestato*, and may take possession thereof, either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the inhabitants of the country where the said property lies shall be liable to pay in like cases."

Treaties and Conventions between U. S. and Other Powers, pp. 981, 982 (9 Stat., 830, 831).

The treaty made between the United States and the German Empire soon after the formation of the latter does not appear, upon examination, to have carried any purpose of abrogating or annulling the treaties in existence at that time between the states composing the German Empire and foreign countries. Treaties and Conventions, etc., pp. 363-369 (17 Stat., 921-933). See, also, comment upon this subject in *Wunderle* v. *Wunderle* (Ill.), 33 N. E., 195, 19 L. R. A., 84, 86; *In re Thomas*, 12 Blatchf., 370, Fed. Cas. No. 13,887. That treaty, perhaps it may be said, impliedly recognized the former treaties referred to, so far as property rights were concerned, in the following provision appearing in the last paragraph of article 10, viz.: "In all successions to inheritances, citizens of each of the contracting parties shall pay in the country of the other such duties only as they

Ehrlich v. Weber.

would be liable to pay, if they were citizens of the country in which the property is situated or the judicial administration of the same may be exercised." Treaties and Conventions, etc., page 366 (17 Stat., 926).

Our statute controlling the inheritance of our own citizens in cases similar to the present is the following:

"If the estate was acquired by the intestate, and he died without issue, his land shall be inherited by his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided amongst them equally." Shannon's Code, section 4163, subsec. 2.

Under our statute of distributions, the personalty, in case of the death of both the father and mother of the intestate, would be divided equally between brothers and sisters. Shannon's Code, section 4172, subsec. 5.

In case of a conflict between the statutes of a State and the terms of the treaty, the latter must prevail, since the federal constitution provides that "All treaties made or which shall be made under the authority of the United States shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding" (article 6). *Hauenstein* v. *Lynham,* supra; *Ex parte Cooper,* 143 U. S., 472, 12 Sup. Ct., 453, 36 L. Ed., 232; *Whitney* v. *Robertson,* 124 U. S., 190, 8 Sup. Ct., 456, 31 L. Ed., 386; *United States* v. *Rauscher,* 119 U. S., 407, 7 Sup. Ct., 234, 30 L. Ed., 425; *Blythe* v. *Hinckly,* 180 U. S., 333, 21 Sup. Ct., 390, 45 L. Ed., 557.

This rule has been recognized in this State (*Baker* v. *Shy*, supra) and in other States (*Succession of Rabasse*, 47 La. Ann., 1455, 17 South., 867, 49 Am. St. Rep., 435; *Opel* v. *Shoup*, 100 Iowa, 424, 69 N. W., 563, 37 L. R. A., 586; *Yeaker's Heirs* v. *Yeaker's Heirs*, 4 Metc. (Ky.), 33, 81 Am. Dec., 530). And see extended note to *Succession of Rixner*, 32 L. R. A., 177-189, 81 Am. Dec., 538, note.

In *Blythe* v. *Hinckly*, supra, it is said: "This court has held from the earliest times, in cases where there was no treaty, that the laws of the State where the real property was situated governed the title, and were conclusive in regard thereto." 180 U. S., 341, 21 Sup. Ct., 393, 45 L. Ed., 557. Again: "Questions have arisen as to the rights of aliens to hold property in a State under treaties between this government and foreign nations which directly provide for that right, and it has been said that in such case the right of aliens was governed by the treaty, and, if that were in opposition to the law of the particular State where the property was situated, in such case the State law was suspended during the treaty or term provided for therein." Id.

The clear meaning of article 2 of the treaty is, touching the right of inheritance, that the aliens protected thereby shall have the same right as citizens in the same situation—that is, shall inherit just as they would if they were citizens—with the qualification that this right shall be subject to the exercise of a power to sell the land and withdraw the proceeds within a time limited.

It was held in *Schultze* v. *Schultze* (Ill.), 33 N. E., 201, 19 L. R. A., 90, 36 Am. St. Rep., 432, construing similar language in another treaty, that the alien took "a fee, determinable by the non exercise of the power of sale within" the time limited; approving *Kull* v. *Kull*, 37 Hun, 476.

On the theory that the rights of the complainant are controlled wholly by the treaty, it would result that he would take an interest in the land according to Shannon's Code, section 4163, subsec. 2, above quoted, qualified by the necessity of selling within the two years limited in the treaty, or within such reasonable time thereafter as the court might fix; also that he would have the right to file a bill for partition, preparatory to a sale, as was done in this case. *Schultze* v. *Schultze*, supra.

But as held in *Blythe* v. *Hinckly*, supra, there is no incapacity on the part of the State to give to aliens more than the treaty vouchsafes to them. This view of the matter necessitates an inquiry into the meaning of our statutory provisions purporting to regulate the rights of aliens in property situated in this State.

The act of 1875, reproduced in Shannon's Code in sections 3659 and 3650, was designed by the legislature to completely cover the ground, and in fact did so; thereby superseding the provision of the Code of 1858, and operating as an implied repeal of those sections. This act placed aliens in all respects, as to the succession to property, in the same situation as citizens.

The act of 1883 relating to the same subject must be construed *in pari materia* with the act of 1875, but, operating as a limitation upon the rights granted by the

former act, must be strictly construed. So construing it, we hold that it only applies to a case in which all of the heirs are aliens; and inasmuch as one of the two heirs to the estate in controversy in the present case is a citizen, and one an alien, the act does not apply to the case before us, and the act of 1875 controls, with the result that the complainant takes a full half interest in the estate.

It is perhaps needless to add that the act of 1883 could not in any event regulate the rights of the parties in any case falling within the terms of the treaty copied above, since its provisions are in clear contravention of the treaty.

If it was required of the complainant to make formal claim of his rights under the treaty, the demand was sufficiently made in the pleadings; but we are of opinion that no such demand was necessary, since "the constitution, laws, and treaties of the United States, are as much a part of the laws of every State as its own local laws and constitution." *Blythe* v. *Hinckly,* 173 U. S., 501, 508, 19 Sup. Ct., 497, 43 L. Ed., 783, 786. "This," it was said in *Hauenstein* v. *Lynham,* 100 U. S., 483, 25 L. Ed., 628, "is a fundamental principle in our system of complex national policy."

The chancellor committed no error in the matter of costs and commissions complained of in the brief of defendant's counsel.

The costs of the court below will be paid as decreed by the chancellor.

The defendant will pay the costs of this court.