Whipple, complainant, vs. Farrar et al., defendants.

Under the act approved March 31, 1851, (*Sess. L.* 1851, 68,) amendatory to ch. 79 of R. S., relative to sales of real estate on execution, one who had previous to the passage of the act become equitably vested with the title which the purchasers at an execution sale acquired by the expiration of the time to redeem, is entitled in equity to a conveyance of the property from the successor of the officer who made the sale.

The amendatory act referred to is not liable to the objection that it creates any new, or divests any pre-existing rights, for although retrospective in its operation, it is only so in providing a remedy where none existed before, without in any way affecting the rights of the judgment debtor.

Chancery having obtained jurisdiction of a cause for any purpose of relief, will retain it for the purpose of giving full relief. Thus the Court having determined that the equitable title of premises is in the complainant, will decree a surrender of possession to him, instead of leaving him to his further remedy by ejectment.

Complainant not having perfected his title under an execution sale, by a Sheriff's deed, until several years after the time of redemption had expired, the Court refused to compel the defendant, who had retained possession, to account for the rents and profits of the premises for the intermediate period.

Case reserved from Wayne Circuit Court.

The bill of the complainant alleges, that in 1833, Obadiah Holmes, C. V. B. Hasbrook, and James Bailey, were partners in business, in the City of New York. The defendant, Farrar, became indebted to them, and in 1837, Bailey being then deceased, Holmes & Hasbrook, as survivors, brought suit in the Wayne Circuit Court, and recovered judgment against Farrar for $1,275 46. That upon the judgment, a writ of *fieri facias* issued. That upon the 1st of November 1838, said writ was levied upon the interest &c. of Farrar, in lots number eighty-three and fifty-six, in section six, in the city of Detroit, according to the plan of said city. That afterwards, said lots were sold by the sheriff on said execution, and struck off to said Holmes & Hasbrook for $1,374 18; and that the proper certificates of such sale were made, filed, and delivered, pursuant to the statute. That in 1840 said Hasbrook died, leaving a widow and four children. That the said firm, and also said Holmes, were indebted to the complainant in about the sum of $1,257, and in 1841, in consideration of a release and discharge of the same, Holmes executed and delivered to him an assignment of said judgment against Farrar, and a conveyance of all real estate that might have been sold for the satisfaction thereof, and bid in by Holmes—both complainant and said Holmes at the time supposing that if property had been so sold, it was bid off in the name of Holmes alone, as such had always been the practice of the firm. That in 1843, Thompson, then Sheriff of Wayne County, in pursuance of said sale, executed a conveyance of said premises to said Holmes & Hasbrook. That in 1850, Holmes having discovered that the purchase and deed were in the names of himself and Hasbrook, executed a conveyance by quit claim deed of the said premises, to complainant. That in January, 1852, complainant filed a petition in the Supreme Court of the State of New York, upon which, such proceedings were had, that in pursuance of

a decree of said Court, the widow of said Hasbrook, and his said children, by their guardian, on the tenth of February 1852, executed a conveyance by quit claim deed of said premises to complainant. That all of said conveyances were duly executed, recorded, &c. That ever since the execution sale in 1838, defendant, Farrar, had continued in the use, enjoyment and possession of the premises, and had not conveyed, mortgaged, or incumbered the same, but claimed, pretended, and represented himself to be the owner in fee of said premises, and that he had never been divested of the legal title thereto, and refused to quit, or render up possession of the same. That complainant was the owner of said premises, and held the equitable title thereto: that the said pretenses and refusals of Farrar constituted a blot, &c., upon his title, and were against equity and good conscience. That defendant, Baldwin, was Sheriff of said county, and successor of the Sheriff who made the execution sale; that complainant had frequently applied to him to execute a conveyance of said premises to complainant, pursuant to law, which he had utterly refused to do.

The bill prayed that the defendants might be decreed to execute to complainant a deed, or other proper conveyance of all the title and interest which said Farrar had in said premises on the first day of November, 1838, and that said Farrar might also be decreed to yield and render up to complainant the possession of the same, and to pay to complainant a just compensation for the use and occupation of the same, and that the complainant might have such other and further relief as the nature of his case required, &c.

To this bill the complainant filed a general demurrer. The Circuit Court decided that complainant was entitled to the relief sought against the Sheriff, (the execution of a deed,) but reserved for the opinion of this Court, the question whether the complainant was entitled to any relief as against defendant, Farrar.

*Wilcox & Gray,* (with whom was J. V. Campbell,) for complainant.

1. The complainant having a perfect right, and no remedy at law to enforce it, when the bill was filed, the matter comes properly within the equitable jurisdiction of Chancery, for complete relief.

The title of the complainant, whenever made perfect at law, originates in fact upon the ending of the judgment debtor's equity of redemption, and he is entitled to possession or the fruits of possession from that time. (*Jackson* vs. *McCall,* 3 *Cow.* 75; *Van Rensselaer* vs. *Sheriff of Onondaga,* 1 *Cow.* 449; *Evertson* vs. *Sawyer,* 2 *Wend.* 509; *Boyd* vs. *Longworth,* 11 *Ohio,* 235; *R. S.* 1838, *p.* 325, § 16.)

In this case, the deed having been actually made, (although erroneously,) the redemption was cut off, and complainant entitled as *cestui que trust* to have his equitable title protected.

Where there is an instrument under which there is a legal remedy in the hands of one party, but the equitable right belongs to another, a Court of Chancery will enforce the rights of the equitable holder in the same manner with a Court of Law. (*Bodle* vs. *Chenango Co. Mutual Ins. Co.,* 2 *Comst.* 53; *Brady* vs. *McCosker,* 1 *Comst.* 214; *Riddle* vs. *Mandeville,* 5 *Cranch,* 322; *Jasper* vs. *Quarles, Hardin,* 461; *Cupit* vs. *Jackson,* 13 *Price,* 721.)

2. But when resort is had to equity, and equitable relief is required, the Court having obtained jurisdiction for one purpose, will retain it for all, and do complete justice, although a remedy might exist at law upon the right as established; the reason for which is, that by so doing, a multiplicity of suits will be avoided. That this is so in most cases, where discovery is sought, is well settled. (1 *Story Eq. Jur.* 64 *to* 72.)

But the doctrine is not confined to cases in which discovery is sought. When discovery is the main object, and after

discovery is obtained, the whole relief might be had at law. A Court of Chancery will nevertheless give relief. But when a Court of Equity must give *a part of the relief*, the rule is nearly if not quite universal, that full relief should be granted. (*Cathcart* vs. *Robinson*, 5 *Pet.* 264; *Irvine* vs. *McRea*, 5 *Humph.* 534; *Chinn* vs. *Heale*, 1 *Munf.* 63; *Bradley* vs. *Bosley*, 1 *Barb. Ch. R.* 125.)

The following cases recognize the same general doctrine that when equity has exercised jurisdiction for any purpose, it will retain it and complete the relief, whether there be a legal remedy or not: McRaven *vs.* Forbes, 6 How. Miss. R. 569; 4 Hamm. 766; Hawley *vs.* Sheldon, Harr. Ch. R. 420; Armstrong *vs.* Gilchrist, 2 Johns. Ca. 425; Rathbone *vs.* Warren, 10 J. R. 587; Pratt *vs.* Northam, 5 Mason R. 105; Martin *vs.* Dryden, 1 Gilm. R. 187; Chichester *vs.* Vass' Adm'r, 1 Munf. R. 98; King *vs.* Baldwin, 17 J. R. 384; LeRoy *vs.* Veeder, 1 Johns. Ca. 417; Hepburn *vs.* Dunlop, 1 Wheat. 197; Ludlow *vs.* Simond, 2 Caines Ca. 38; Yates *vs.* Hambly, 2 Atk. 360; Pearce *vs.* Creswick, 2 Hare, 286; Conro *vs.* Port Henry Iron Co., 12 Barb. S. C. R. 27; Mays *vs.* Taylor, 7 Geo. R. 238; Brooks *vs.* Stolley, 3 McLean R. 523; Isham *vs.* Gilbert, 3 Conn. 166; Russell *vs.* Clark's Ex'rs, 7 Cranch, 69; Frost *vs.* Myrick, 1 Barb. S. C. R. 362; Kershaw *vs.* Thompson, 4 J. C. R. 609.

That possession, as well as any other relief, may be properly given, see also Yates *vs.* Hambly, 2 Atk. 360; Blight *vs.* Banks, 6 Monroe, 192; Irvine *vs.* McRea, 5 Humph. 554; Barnewall *vs.* Barnewell, 3 Ridgw. P. C. 66; 2 Chitty Eq. Dig. 1206; Kershaw *vs.* Thompson, 4 J. C. R. 609.

*H. T. Backus*, for defendant in error.

1. As against the sheriff the courts of law can give full and adequate relief, and equity will not relieve where there is a plain remedy at law. (*Artchfield* vs. *Porter*, 3 *Ohio R.* 518; *McKee* vs. *B'k Mount Pleasant*, 7 *Id.* 175; 8 *Id.* 46.)

2. But if relief can be given on this bill, on the principle of either mistake or accident as to the defendant, Baldwin, so as to reform the deed and make it operative as conveying the original execution title, it cannot be extended so as to give the relief sought, or any relief against the defendant, Farrar, for the obvious reason that the complainant's title must rest upon the title as made by execution, to be good or bad, as that may be either good or bad, and the defendant cannot be called to make good any defects in the execution title, by his conveyance, any more than on a purely legal right the defendant can be called to answer for mesne profits, or be turned out of possession without a trial of the title at law. All that the complainant could ask, would be to be placed in the same position that he would have been in, had the sheriff's deed been regularly made out, and then test his title and right of possession and mesne profits at law. The remedy at law is perfectly adequate for all purposes, supposing the execution title good, and chancery will not sustain a suit where there is an adequate remedy at law. (2 *U. S. Eq. Dig.* 151.) Equity has no jurisdiction to make a sheriff pay over moneys on execution. (*Douglas, lessee,* vs. *Wallace,* 11 *Ohio R.* 42) On the dissolution of an injunction and dismissal of a bail, equity will not assess the defendant's damages. The remedy is at law, on the bond. (*Kent* vs. *Bierce,* 6 *Ohio R.* 336.) Equity has no jurisdiction to allow an occupying claimant payment for his improvements. He has a complete remedy at law. (*Lee* vs. *Parks,* 6 *Ohio,* 469.)

By the Court, Green, P. J.

In order to determine whether the complainant is entitled to any relief as against Farrar, it seems necessary to consider the effect of the deed to be executed by the defendant, Baldwin, as sheriff, and the successor of the officer who made the sale. This involves an examination of the statutes relative to the sale of real estate upon execution, and an in-

quiry as to the nature and extent of the complainant's equities.

By the Revised Statutes of 1838, under which the sale of the premises in question was made, if the land was not redeemed within the time there limited, the officer who made the sale, or his successor in office, was required to complete the same, by executing a deed therefor, in due form of law, to the purchaser, and such deed was declared to be valid and effectual to convey all the right, title and interest which was sold by such officer. If the purchaser should die before the expiration of the time allowed for redemption, or before the delivery of the deed, then the officer was required to execute and deliver such deed to the executors or administrators of such deceased purchaser. (*R. S.* 1838, *p.* 325, §§ 16, 17.) In 1841, (*Laws of* 1841, *p.* 134,) sec. 16, above referred to, was so amended as to provide that in cases of land theretofore sold on execution, the officer making such sale, or his successor in office, should complete the same by executing a deed thereof to the purchaser, or to the person or persons who might have acquired the interest of the purchaser *by assignment, or otherwise.*

By the Revised Statutes of 1846, the officer who made the sale, or his successor in office, after the time limited for redeeming had expired, was required to convey the premises sold, to the purchaser, or to the creditor, who might have acquired the *title* of such purchaser as therein provided; and in case the person so entitled to a conveyance should die before the execution thereof, such conveyance was required to be executed to the executor or administrator of such deceased person. (*R. S., p.* 322, *ch.* 79, §§ 33, 34.)

In 1848, a section was added to chap. 79, making its provisions apply to sales on executions made prior to its taking effect, subject to the time of redemption provided by the law under which such sales were made. (*Laws of* 1848, *p.* 314.)

By an act approved March 31, 1851, (*Laws of* 1851, *p.* 68,)

chap. 79 of the R. S., relative to the sale of real estate on execution, was so amended as to authorize the deed of conveyance therein provided for, to be executed to the *assignee* of the original purchaser, or of the creditor who should have obtained the title of such original purchaser; and section 34 of said chapter, was amended so as to read as follows:

"SEC. 34. In case the person who, by the provisions of the preceding sections, would be entitled to a conveyance of any real estate sold by virtue of an execution, shall die before the execution of a conveyance, the officer shall execute and deliver such conveyance to the executor or administrator of the person so deceased: *Provided*, That in any case under this *or the preceding section*, when the rights of the person or persons entitled to such real estate, or any interest therein, shall render it necessary, the Circuit Court of the county in which the officer who made the sale resided, on a hearing of the parties interested, properly brought before it by bill or petition, may direct the conveyance to be made to the person or persons equitably entitled thereto, in such manner as shall be just, and such conveyance shall have the same effect as provided in the preceding section."

The preceding section referred to, provides that such conveyance "shall be valid and effectual to convey all the right, title and interest, which was sold on such execution." (*Laws of* 1851, *p.* 68.)

The case shows that the premises in question were purchased by Holmes & Hasbrook, who were partners, in satisfaction of a judgment in their favor, and *for the benefit of the partnership firm*, and that Hasbrook died before the execution of the deed. The deed executed by Thompson, as Sheriff, was therefore a nullity, so far as the interest of Hasbrook was concerned. The complainant purchased from Holmes all the right, title and interest, which he could convey, in consideration of a sum of money which was owing to him from the firm, and from Holmes. By a proceeding in the

Supreme Court of New York, the complainant also acquired all the equitable right and interest which the widow and heirs at law of Hasbrook may have had in the premises, derived from the execution sale. But the conveyance and assignment from Holmes, and the proceedings aforesaid, did not vest in him the full legal title. In view of these facts, however, it seems clear that he was equitably entitled to a conveyance of the premises, and was therefore entitled to relief under the provisions of the amendatory act before cited, if that act can be regarded as applicable to the complainant's case. He had become equitably vested, in the character of an assignee, with all the title which Holmes & Hasbrook acquired by the purchase upon the execution sale, and the expiration of the time allowed for redemption. The title of a purchaser of real estate sold on execution, or of his legal assignee, after the time of redemption has expired, consists in an absolute right to a conveyance from the proper officer, which shall vest in him all the right, title and interest of the judgment debtor at the time of the levy. The party having the *legal* right to such a conveyance, could compel the execution of it, if refused, by mandamus from the proper Court. But the party having only an *equitable* right to such a conveyance, must, in order to enforce such right, come into a Court of Chancery. Without some statutory provision, however, recognizing such equitable right, and authorizing the Court to give effect to it, so as to invest him with the legal title, the holder thereof would be remediless, because, aside from such authority, the statute contemplates no other result than the transfer of the legal title under its provisions. If this view be correct, the only remedy which the complainant had, was in the Circuit Court for the county of Wayne, in which the officer who made the sale resided at the time of the sale, and inasmuch as he must proceed by bill or petition, his resort was properly had to the Chancery side of that Court, under the amendatory act of

1851. This act does not appear to be obnoxious to the objection, that it creates any new rights, or divests any that before existed; although being an amendment to chap. 79 of the R. S., it is retrospective in its operation under the amendment of 1848 to the same chapter, (*Laws of* 1848, *p.* 314,) it is so only in providing a remedy where none existed before. Farrar's rights are not in any way abridged or affected by the recognition of an equitable right to a conveyance, derived from the purchasers at the execution sale, and affording to the persons having such right, an adequate and complete remedy for its enforcement. All Farrar's right, title and interest in the premises, were sold by the Sheriff upon the execution, subject to an equity of redemption, to exist for a year. When that was extinguished, all that the judgment debtor had left was the naked legal title, which would probably enable him to continue in the possession and use of the premises until the sale was "*completed*," by the execution of conveyance. The amount paid for the premises had been appropriated for his use and benefit, and as against him, the purchasers, or their assignee, had an absolute right to a conveyance, vesting them, or him, with all the "title and interest which was sold on such execution." The statute recognizes the right of a purchaser as a "title," inchoate, indeed, but such an one as might pass from one creditor to another by purchase, or by assignment to any purchaser thereof. Such title, whatever it may be, passed from the debtor by virtue of the sale; and whatever difficulties might exist to prevent its being made available, it does not re-vest in him after his equity has expired, and he has failed to redeem. It is manifest, then, that Farrar can in no way be injured, or any just right of his be impaired, by giving effect to the statute under which this suit was instituted in the Court below, and affording the relief asked for as against the Sheriff, viz: the execution of a conveyance. This conclusion determines the effect which is to be given to that conveyance, and which, as

we have seen, is to vest in the complainant all the right, title and interest which were sold on the execution, and consequently to give him the right to the possession of the premises.

We are now prepared to consider whether the complainant is entitled to the relief prayed for by his bill, or any portion of it, as against the defendant, Farrar. A decree of the Court below having the effect above indicated, involves an examination and determination of all the facts which it would be necessary for the complainant to establish in an action at law for recovery of possession against Farrar, and it would be matter for regret, if under these circumstances, the Court of Chancery had not the power to grant the full relief to which it finds the complainant entitled, instead of leaving him to seek his further remedy by action of ejectment. Decreeing the surrender of possession of lands in a proper case, is an ordinary and familiar exercise of the power of the Court, and the execution of such a decree is as easy and simple as is the execution of a judgment for possession in an action of ejectment in a Court of law. It is not, in general, within the province of Courts of Chancery to retain jurisdiction and grant relief, where the party has a clear, certain, and adequate remedy at law. But it has often been held, and in New York and some of the other States, it is regarded as a settled rule, that where a Court of Chancery has gained jurisdiction of a cause for any purpose of relief, it will retain it, for the purpose of giving full relief. (1 Story Eq. Jur. § 71, note 2, and cases there cited; Bradley vs. Bosly, 1 Barb. Ch. Pr. 151.) See also, 2 Harris Ch. R. 286.)

This is a rule of such practical utility in promoting the ends of justice—preventing unnecessary suits, saving expense, and avoiding delay, as commends itself strongly to our approbation, and the case under consideration is one where it may well be applied.

The complainant further asks that the defendant, Farrar, may be decreed to account for, and pay to him a just compensation for the use and occupation of the premises. Several cases were cited upon the argument, in which it has been held, that the conveyance executed by the officer who made the sale, or his successor in office, relates back to the sale, or to the expiration of the time allowed for redemption, and hence, it is concluded that the purchaser or his assignee, is entitled to the possession, or the fruits of possession, from that time. The Sheriff's deed relates back to the levy for the purpose of protecting the title against any conveyance or incumbrance by the judgment debtor, and to the ending of the equity of redemption for the purpose of protecting the purchaser in the possession, when proceeded against by an action of ejectment, or for the purpose of supporting a conveyance executed by the purchaser or his assignee, &c. (*Jackson* vs. *McCall*, 3 *Cow. R.* 75; *Van Rensselaer* vs. *Sheriff of Onondaga*, 1 *Cow. R.* 449; *Dobson* vs. *Murphy*, 1 *Dev. and Bate.* 586; *Boyd* vs. *Longworth*, 11 *Ohio R.* 234.) It does not follow, however, as a necessary conclusion, that such relation entitles the purchaser or his assignee to compensation for the use and occupation of the premises before his own title is completed. No case has been cited or found, establishing such a principle. The proceeding by which the judgment debtor is to be divested of his property is a statutory one, and until that proceeding has been *completed*, so as to vest the title, and with it the right to the possession in another; he may lawfully remain in the use and occupation of the premises without being accountable. Upon the expiration of the time limited for redeeming, if the premises are not redeemed, the purchaser, or person holding his title, has a right to have the sale *completed* by the execution of a deed of conveyance which will give him the right of possession; but until such deed is executed, or he become in some other way vested with the legal title, he has no right to

demand, and cannot recover the possession, and not having been entitled to the possession, he has no claim on account of the use and occupation.

We do not think the complainant is entitled to a release from Farrar, although he may have claimed a larger estate than he had in the premises. The complainant had not perfected his title, and had not, as before stated, either the possession or right of possession, but Farrar held both. The complainant is not, therefore, in a situation which entitles him to the aid of a Court of Chancery to quiet his title.

Let it be certified to the Circuit Court for the County of Wayne in Chancery, as the opinion of this Court, that the complainant is entitled to the relief prayed for by his bill as against the defendant, Farrar, excepting as to a release of the premises in question, and as to compensation for the use and occupation thereof, but that he is not entitled to such release or compensation.