JEFFERY *v.* LATHRUP.

1. INJUNCTION—DRAINAGE EASEMENT—BUILDING RESTRICTION—EVI-
DENCE.

Granting defendants' motion to dismiss bill to enjoin construc-
tion of house over or on drainage easement and in violation of
building restriction, at conclusion of plaintiffs' testimony *held,*
error, where allegations and proofs tended to show violation
by defendants of a drainage easement and a building restric-
tion as to grade of lot above street, and both present and con-
tinuing damage to plaintiffs, a prima facie case.

2. SAME—JURISDICTION—DRAINAGE EASEMENT—BUILDING RESTRIC-
TION—CONTINUING DAMAGE.

Equity had jurisdiction to grant injunctive relief to plaintiffs
against defendants who, in the construction of a house on
adjacent lot violated a drainage easement and a building re-
striction as to grade of lot above street in such a way as to
cause great and continuing damage to the quiet enjoyment of
plaintiffs' home.

3. EASEMENT—PLATS—RECORDING—DEEDS—DEDICATION TO PUBLIC.

An easement recorded on a subdivision plat by reference to which
subdivision sales are made is binding on the parties who pur-
chase the lots notwithstanding the easement is not specifically
mentioned in the deeds and may not be dedicated to the public.

4. COVENANTS—BUILDING RESTRICTION—DEGREE OF VIOLATION.

A building restriction applicable to subdivision lots, which has
been violated in some degree, does not thereby become void and

REFERENCES FOR POINTS IN HEADNOTES

[1] 28 Am Jur, Injunctions § 275.
[2] 28 Am Jur, Injunctions §§ 129, 147.
[3] 17A Am Jur, Easements § 39.
Conveyance of lot with reference to map or plat as giving pur-
chaser rights in indicated streets, alleys, or areas not abutting
his lot.   7 ALR2d 607.
[5] 19 Am Jur, Equity § 127.
[6] 28 Am Jur, Injunctions § 59.
[7] 3 Am Jur, Appeal and Error § 767.

unenforceable when a violation of a more serious and damaging degree occurs.

5. EQUITY—JURISDICTION.
   Once equity has taken jurisdiction for one purpose, it should dispose of all aspects of the litigation.

6. SAME—LACHES.
   Laches *held*, not to have been shown on plaintiffs' part in commencing suit to enjoin defendants from violating drainage easement and building restriction as to grade of lot above street.

7. APPEAL AND ERROR—BRIEFS.
   Certain statements in appellees' brief are ordered stricken therefrom, where they sought to introduce into the record on appeal facts which were not before the trial court in injunction suit.

Appeal from Oakland; Beer (William John), J. Submitted January 3, 1961. (Docket No. 7, Calendar No. 48,514.) Decided April 26, 1961.

Bill by Richard Jeffery and Evelyn Jeffery against Earl Lathrup, Olive Lathrup, Paul Kozub and wife, and Philip E. Dahl to restrain interference with drain tile and to enjoin construction of house over or on drainage easement and in violation of building restriction. Bill dismissed upon conclusion of plaintiffs' testimony. Plaintiffs appeal. Reversed and remanded.

*Friedman, Meyers & Keys* (*Donald E. Barris* and *Lawrence B. Kron,* of counsel), for plaintiffs.

*William H. Wilmot,* for defendants Lathrup.

*V. John Manikoff,* for defendant Dahl.

EDWARDS, J. Plaintiffs-appellants are home owners in a developing subdivision who filed a bill of complaint in equity to restrain alleged violation of a building restriction and a drainage easement in

the construction of an adjacent house. After hearing plaintiffs' testimony, the Oakland county circuit judge granted defendants' motion to dismiss the bill of complaint, holding that plaintiffs had not proved their entitlement to injunctive relief and that they have an adequate remedy at law in a suit for damages. Plaintiffs appeal.

Appellant Jeffery bought a home in September, 1956, in the Woodcroft subdivision of Farmington township. The price was $29,500. The salesman involved in the deal was defendant-appellee Earl Lathrup. Mr. and Mrs. Lathrup also owned the adjacent lot to the south of appellants, and were the original subdividers of Woodcroft.

The original deed to the Jeffery lot made reference to the recorded plat of the Woodcroft subdivision. At the time of the Jeffery purchase, the plat for the Woodcroft subdivision showed a 20-foot "easement for drainage" running over the rear portion of the Jeffery property, diagonally across the adjacent lot owned by the Lathrups. At the time of the sale Lathrup discussed the drainage with Mr. Jeffery and told him that there was an 8-inch tile line in this 20-foot easement. Mr. Jeffery claimed Lathrup represented that his lot would have perfect drainage.

For 3 years Jeffery claims he had no drainage problems.

In the fall of 1959 appellees commenced construction activities involving the building of a house squarely across the 20-foot easement for drainage shown on the Woodcroft subdivision plat. The Lathrups had previously sold the lot adjacent to the Jefferys to appellee Dahl.

In preparation for Dahl's construction of a house for appellees Kozub, Earl Lathrup undertook to reroute the 8-inch drain. The easement referred to

followed a natural draw and the effect of the building plan was described as follows:

"*The Court:* Do you concede that the natural drainage has been changed? Remember, we are dealing with acreage.

"*Mr. Wilmot:* We admit that the property of the defendants is located in a draw over which the normal —a certain amount of the normal watershed passes. We also admit that there was in this draw to take care of that water, an 8-inch tile and that we have diverted the 8-inch tile from the point at the northwest corner of the defendants' property along the north boundary of the property until it arrives at the easterly portion of the property and then along the easterly portion of the property back into the same tile drain."

Construction of the house was begun while the Jefferys were on vacation. On their return on September 21, 1959, Mr. Jeffery claimed that he found the condition described below:

"*A.* Well, the ground, the lowest part of our septic drain field became saturated and caused back pressure in our septic tank so that we couldn't flush our toilets and the drains, we couldn't drain water out of them and my wife couldn't wash and it occurred 2 or 3 weeks after they commenced their basement, the water wouldn't flow away. We also had a drain in our basement and this drain together with our conductor drains are connected to the pipe in the field and because of the fact that the water couldn't run away it backed up in the spill-well and ran into our basement, causing our basement floor rugs to gather large areas of alga mold. In addition to that when we came back from our vacation, the odor in the house was such we couldn't live there unless we aired it out.    *    *    *

"*Q.* Now, will you explain to the court how the changing of the course of that tile, in your opinion has created an odor?

"*A.* Well, I can't tell you how it is causing the odor but I know the odor is there and I am not kidding about it. My wife vomited for 3 days when we came back from our vacation, she couldn't keep food down and I will bring my mother-in-law in, she is 82 years old, when she walked in the house after we came back, she said, 'What in the world is that awful smell,' and it was coming from the basement."

Plaintiffs' testimony tended also to show that the drainage easement which followed a natural draw was important for more reasons than that the 8-inch tile was located in it:

"*A.* Yes, in the spring of the year, shortly after we bought—it was in the spring, I believe, lo and behold we woke up one morning and saw this water coming down over the hill following that natural watercourse where this drain is and I went out there to clear off the grass that had flowed onto the catch basin and the water was right up to my knees, right where that catch basin is at the back of our lot and it flowed in a gusher down over this natural valley and the easterly portion of that south half of lot 94 had 2 feet of water on it and it remained there and flowed away slowly down into the drain where the catch basin is at the south half of lot 94.  *  *  *

"*A.* During these conversations, Mr. Lathrup represented to both Mrs. Jeffery and I that we had perfect drainage and we would never be bothered with drainage problems because of the natural slope of the land and even when we told him about the freshet coming over the hill, he assured me that it would flow away and go down its natural drainage, which it did, and I had extreme confidence in Mr. Lathrup and I didn't question him further because the water did exactly what he said it would, straight across and down into the catch basin in the road and flowed away in an orderly fashion and didn't hurt anybody.

"*Q.* When you say it flowed away in an orderly fashion, you mean it flowed on the surface of the land?

"*A.* Yes.

"*Q.* How deep was that water?

"*A.* Two feet.

"*Q.* In other words, the drainage tile, in your opinion, was never adequate to take care of the natural flow of water?

"*A.* No, I don't think any drainage tile would ever take care of the flow that came down that day because it was 20 feet wide."

This evidence lends considerably greater importance to plaintiffs' contentions pertaining to violation of the grade-line building restriction.

The 8th restriction in the Woodcroft deeds provided:

"8. Each residential lot shall have an established grade line of 18 inches above the average level of the crown of the road in front of said lot."

As to this restriction, plaintiffs presented evidence tending to show that the final grade of the ground level of the house being built by defendants would exceed the 18-inch grade line by a matter of several feet. As to this, Mr. Jeffery testified:

"*A.* Well, the brick wall on the front corner at the north wall of the house is approximately 6 feet above the grade of our land and they will have to grade down in an area of 10 feet or from 6 feet and it is going to leave me down in a hole and since the water has no place to go it is naturally going to flow to the lowest level."

A builder called by plaintiffs, after describing the location and construction of the house under construction, testified:

"Therefore, when the house is completed you will have a sheer wall of dirt that will act as a spillway onto Mr. Jeffery's property."

We take this record, of course, as it comes to us containing the evidence of plaintiffs, but not of defendants since defendants' motion to dismiss was granted at the close of plaintiffs' proofs. The chancellor may have believed that plaintiffs' claims as to the situation were exaggerated. If so, we must say that the record did not disclose in what particular they were.

Plaintiff had alleged, and his proofs tended to show, violation by defendants of a drainage easement and a building restriction, and both present and continuing damage. When plaintiffs rested they had presented a prima facie case, and a full record of the dispute should have been written prior to decree. We believe the circuit judge erred in granting the motion to dismiss.

The chancellor may have been moved by the fact that at time of hearing the footings and basement walls of the new house were in and that no injunctive relief was possible absent great financial damage to defendants. As the testimony stood before him, however, it was obvious that plaintiffs had presented evidence of great and continuing damage to their quiet enjoyment of their own home, resulting from defendants' violations of an easement and a building restriction. There can be no question that in such a situation as plaintiffs alleged, equity has jurisdiction. *Sokel* v. *Nickoli,* 347 Mich 146.

Defendants, however, contend on this appeal that neither easement nor restriction was effective. They assert that since the easement was not dedicated to the public and was not recorded as a covenant in the deeds it was totally ineffective and could be disregarded.

We believe this contention is erroneous. Under Michigan law, an easement recorded on a subdivision plat by reference to which subdivision sales are made

is binding on the parties. *Pulcifer* v. *Bishop,* 246 Mich 579; *Westveer* v. *Ainsworth,* 279 Mich 580; *Rindone* v. *Corey Community Church,* 335 Mich 311.

As to the restriction, defendants claim abandonment, contending that many violations of the 18-inch grade already existed in the subdivision. None was shown, however, which nearly approached the extent of violation involved here. Where the restriction has been violated in some degree, it does not thereby become void and unenforceable when a violation of a more serious and damaging degree occurs. *Carey* v. *Lauhoff,* 301 Mich 168; *Polk Manor Co.* v. *Manton,* 274 Mich 539; *Morgan* v. *Matheson,* 362 Mich 535.

We must presume that this house may now have been completed since no injunction appears to have been in force. If such proves to be the case, expert testimony should be taken on remand as to present and future damages (if any), along with engineering testimony as to possible drainage solutions. Such a solution might be presented to defendants as an alternative to damages representing permanent impairment of the value of plaintiffs' property if the proofs warrant so doing.

Once equity has taken jurisdiction for one purpose, it should dispose of all aspects of the litigation. *Second Michigan Cooperative Housing Association* v. *First Michigan Cooperative Housing Association,* 358 Mich 252.*

We agree with the circuit judge that this record discloses no laches on plaintiffs' part.

We have granted plaintiffs' motion to strike certain statements contained in defendants' brief by which defendants have sought to introduce into the record on appeal facts which were not before the chancellor below.

---

* Same case, 362 Mich 460.

Reversed and remanded for further proceedings consistent with this opinion. Costs to appellants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.