INTERNATIONAL SALT COMPANY *v.* WAYNE
COUNTY DRAIN COMMISSIONER.

1. DRAINS—NOTICES—HEARING ON REVIEW OF APPORTIONMENT—DUE
PROCESS.
  Statute providing for the giving of notice to persons whose names
  and addresses appear upon the last city or township tax as-
  sessment roll as owning land within special assessment district,
  of public meeting for review of apportionment of benefits is
  a proper and permissible means of according due process, where
  it was in addition to publication of the notice in a newspaper
  and posting in 5 conspicuous and public places in each city,
  village, and township where the district is located (US Const,
  Am 14; Mich Const 1908, art 2, § 16; PA 1956, No 40, § 154,
  as amended by PA 1957, No 61).

2. CONSTITUTIONAL LAW—DUE PROCESS—NOTICE.
  An elementary and fundamental requirement of due process in
  any proceeding which is to be accorded finality is notice rea-
  sonably calculated, under all the circumstances, to apprise
  interested parties of the pendency of the action and afford
  them an opportunity to present their objections (US Const,
  Am 14; Mich Const 1908, art 2, § 16).

3. EVIDENCE—JUDICIAL NOTICE—MAILS.
  The mails today are recognized as an efficient and inexpensive
  means of communication.

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Special or Local Assessments §§ 171–173.
  17A Am Jur, Drains and Sewers §§ 74, 75.
[2] 12 Am Jur, Constitutional Law § 598.
[3] 39 Am Jur, Notice and Notices § 28.
  20 Am Jur, Evidence § 108.
[4, 5, 6, 7] 48 Am Jur, Special or Local Assessments §§ 171–173.
  39 Am Jur, Notice and Notices § 28.
  17A Am Jur, Drains and Sewers §§ 74, 75.
[8] 17A Am Jur, Drains and Sewers § 46.

4. DRAINS—NOTICE—HEARING FOR REVIEW OF APPORTIONMENT OF BENEFITS—MAILING—PUBLICATION—POSTING.

The sending of notice by first class mail of public meeting for review of apportionment of benefits in a drain proceeding to landowners whose names appeared on city or township tax assessment rolls is a method reasonably calculated to apprise each taxpayer to whom the notice is sent of his rights and liabilities although service by publication in newspapers, or by posting, is not sufficient alone, as a matter of law, to afford reasonable notice (PA 1956, No 40, § 154, as amended by PA 1957, No 61).

5. SAME—NOTICE—MAILING—JURISDICTION.

Provision of drain code that failure to send notice by mail of public hearing on review of apportionment of benefits, if such notice shall have been published and posted, should not constitute a jurisdictional defect invalidating the tax, must be disregarded in order to hold statute valid that provides for the giving of such notice to property owners within the special assessment district by first class mail (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1956, No 40, § 154, as amended by PA 1957, No 61).

6. SAME—MAILING—PRESUMPTIONS—EVIDENCE.

The presumption of the regularity of the official action of the drain commissioner in mailing his notice of public meeting for review of apportionment of benefits cannot be given the conclusive effect as sought to be provided by statute, but must yield to a showing as to the actual facts in order to constitute due process of law (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1956, No 40, § 154, as amended by PA 1957, No 61).

7. SAME—NOTICE—HEARING FOR REVIEW OF APPORTIONMENT OF BENEFITS.

Plaintiff property owner in drain district to whom it is not shown that there had been mailed a notice of hearing for review of apportionment of benefits by first class mail *held*, entitled to a hearing relating to the assessment against its property, under evidence presented (US Const, Am 14; Mich Const 1908, art 2, § 16; PA 1956, No 40, § 154, as amended by PA 1957, No 61).

8. COSTS—DRAINS—NOTICE—HEARING FOR REVIEW OF APPORTIONMENT OF BENEFITS.

No costs are allowed in suit to set aside drain tax assessment against plaintiff's property because of failure to receive notice of hearing on review of apportionment of benefits, in view of the nature of the question involved (US Const, Am 14; Mich.

Const 1908, art 2, § 16; PA 1956, No 40, § 154, as amended by PA 1957, No 61).

BLACK, KAVANAGH, and SOURIS, JJ., dissenting.

Appeal from Wayne; Fitzgerald (Neal E.), J. Submitted June 14, 1962. (Docket No. 59, Calendar No. 49,553.) Decided July 18, 1962.

Bill by International Salt Company, a New Jersey corporation, against Henry V. Herrick, Wayne County Drain Commissioner, to set aside drain tax assessment against its property or to secure equitable relief in connection therewith. Bill dismissed. Plaintiff appeals. Attorney General intervenes in public interest. Modified and remanded to afford plaintiff hearing.

*Alexander P. Leete,* for plaintiff.

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy, David E. Flayer* and *William F. Bledsoe,* Assistant Prosecuting Attorneys, for defendant.

*Frank J. Kelley,* Attorney General, and *Eugene Krasicky,* Solicitor General, for intervenor.

CARR, C. J. This case involves the validity of an assessment levied in proceedings under the Michigan drain code of 1956* for the cleaning out, relocating, widening, deepening, straightening, and extending of a Wayne county drain. Said drain, known as the Sexton-Kilfoil drain, and the drainage district embracing property assessed for the construction thereof, was established, as the record indicates, "many years ago." It lies in the townships of

* PA 1956, No 40, as amended (CLS 1956, § 280.1 *et seq.,* as amended [Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 11.1001 *et seq.*]).

Romulus, Ecorse, and Taylor, and the cities of Lincoln Park, Allen Park, Wyandotte, and Ecorse.

Following the filing of a petition for the cleaning out and extending of the drain the defendant commissioner proceeded pursuant to the drain law, and endeavored to comply with the requirements thereof. Following the final order of determination and the apportionment of benefits, he fixed the 1st of June, 1960, as the time for receiving bids for the doing of the work and for a review of the apportionment of benefits. The procedure with reference to the giving of notice of a hearing of such character is set forth in section 154 of the drain code, CLS 1956, § 280.154, as last amended by PA 1957, No 61 (Stat Ann 1960 Rev § 11.1154). Insofar as material in the instant controversy said section reads as follows:

"The commissioner shall give notice for the receiving of bids for the construction of such drain and also for the holding of a public meeting, at which a review will be had of the apportionment of benefits made as aforesaid. Such notice shall specify the time and place of receiving bids, and the time and place of the meeting for review of apportionment, which shall be not less than 5 nor more than 30 days after the date set for receiving bids. Such notice shall be given by publication at least 2 insertions in some newspaper published and of general circulation in the county if there is one, the first publication to be at least 10 days before the date set for receiving bids, and by posting in 5 conspicuous and public places in each city, village and township where the district is located, within the limits of said district, at least 10 days before the date set for receiving bids. The drain commissioner also shall send notice by first class mail of the time and place of such meeting, at least 10 days before the date thereof, to each person whose name appears upon the last city or township tax assessment roll as owning land within the special assess-

ment district, at the address shown on such roll, and if no address appears thereon, then no notice need be mailed to such person. The drain commissioner shall make an affidavit of such mailing and shall recite therein that the persons to whom such notice was mailed, constitute all of the persons whose names and addresses appear upon such tax rolls as owning land within the particular special assessment district, and such affidavit shall be conclusive proof that notice was mailed to each person to whom notice is required to be mailed by the terms of this section. The failure to send or receive any such notice by mail shall not constitute a jurisdictional defect invalidating a drain proceeding and/ or tax, if notice shall have been given by publication and posting as provided in this section."

Plaintiff herein is the owner of 69.791 acres of land in Romulus township, against which an assessment for the contemplated project was made in the sum of $11,495. Of such parcel 58.64 acres were included in the original assessment district. It is a matter of inference from the record that the assessment here involved was based on the theory of additional benefits to the property previously assessed. Plaintiff instituted the present suit under date of September 1, 1960. It alleged in its bill of complaint that its name appeared on the Romulus township tax assessment roll as owner of the land in question and that its address was given as 12841 Sanders avenue, Detroit, the principal office of plaintiff within this State.

Plaintiff alleged further that it received no notice from defendant, or otherwise, of the review of the apportionment of benefits on June 1, 1960, that it observed no published or posted notice of such hearing, and that it learned for the first time on August 4, 1960, that its land had been included in the Sexton-Kilfoil assessment district. Plaintiff's pleading further alleged that the project did not in

any way benefit its property, and that for such reason the tax was improperly assessed. Relief was sought on the ground that the assessment of the tax without notice constituted a violation of article 2, § 16, of the Michigan Constitution (1908) and of section 1 of the Fourteenth Amendment of the Constitution of the United States. Plaintiff asked that the assessment against its property be set aside or that it be granted, in the alternative, suitable equitable relief. On behalf of defendant answer was filed asserting in substance that he had proceeded in accordance with the drain code, that due notice of the hearing on the apportionment of benefits was mailed to plaintiff, that such notice was duly published and posted as required by the statute, and that plaintiff was not entitled to the equitable relief sought.

Following hearing in circuit court the trial judge upheld in all respects the validity of pertinent provisions of the drain code. With reference to factual issues he determined that plaintiff did not receive notice of the hearing on apportionment of benefits, and that the proofs did not show the actual mailing of a notice to plaintiff at its proper address. He concluded, however, that as far as possible the requirements of the statute had been followed by the drain commissioner. The trial judge declined to consider the question whether the property of plaintiff would be benefited by the project, suggesting that in order to present such question plaintiff should pay the assessment under protest and bring appropriate action to recover. No appeal has been taken from such ruling. In accordance with the opinion rendered a decree was entered dismissing the bill of complaint. From such decree, plaintiff has appealed.

Counsel for the respective parties are not altogether in accord as to the questions involved. Coun-

sel for appellant states the issues before us as follows:

"1. Did plaintiff have notice by first class mail, as required by section 154 of the drain code of 1956, as amended, of the public meeting at which a review will be had for the apportionment of benefits, to determine a special drain tax assessed against plaintiff's property?

"2. In the absence of notice by mail, did the publication and posting of such notice, in accordance with the provisions of section 154 of the drain code of 1956, as amended, meet the requirements of due process under the Michigan Constitution and article 14 of the amendments to the Constitution of the United States of America?"

Counsel for defendant state what they consider the question involved is in the following language:

"Do the provisions of section 154 of the drain code, (CLS 1956, § 280.154, as amended, Stat Ann 1960 Rev § 11.1154), relating to notice to landowners of the date for receiving bids for the construction of a drain and for the holding of a public meeting for review of apportionment of benefits, meet the requirements of the 'due process clause' of the Fourteenth Amendment of the Constitution of the United States, and article 2, § 16 of the Michigan Constitution?"

It is, we think, apparent that constitutional issues were considered in circuit court. We note that in their briefs counsel representing the respective parties stress certain decisions of the United States supreme court relating to due process of law in the giving of notice to interested parties of proceedings affecting property rights and interests. Directly involved are the provisions of section 154 of the drain code, above quoted, with reference to the conclusive nature of the affidavit of mailing required to be made by the drain commissioner, and the effect

of failure to send notice by mail as required by prior specific provisions of the section.

The legislature in the enactment of the drain code and of amendments thereto clearly imposed the requirement that in a situation of the character here involved notice should be mailed to each property owner whose name appeared on the assessment roll together with his address. In addition thereto publication in newspapers, and by posting, was required. In a case of this character we think that statutory provision for resort to the mails is proper and permissible as constituting due process. The supreme court of the United States commented on such method of service in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 US 306 (70 S Ct 652, 94 L ed 865). Involved there was the sufficiency of notice to beneficiaries under judicial settlement of accounts by the trustee of a common trust fund established under the banking laws of the State of New York. The number of persons entitled to service was, as in the case at bar, numerous. In discussing the question at issue the basic principle applicable was stated as follows (p 314):

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer*, 311 US 457 (61 S Ct 339, 85 L ed 278, 132 ALR 1357); *Grannis* v. *Ordean*, 234 US 385 (34 S Ct 779, 58 L ed 1363); *Priest* v. *Las Vegas*, 232 US 604 (34 S Ct 443, 58 L ed 751); *Roller* v. *Holly*, 176 US 398 (20 S Ct 410, 44 L ed 520)."

In holding that statutory notice by publication was not sufficient, it was further said (pp 315, 319):

"But when notice is a person's due, process which is a mere gesture is not due process. The means

employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski,* 274 US 352 (47 S Ct 632, 71 L ed 1091), with *Wuchter* v. *Pizzutti,* 276 US 13 (48 S Ct 259, 72 L ed 446, 57 ALR 1230), or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes. * . * *

"The statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand. However it may have been in former times, the mails today are recognized as an efficient and inexpensive means of communication. Moreover, the fact that the trust company has been able to give mailed notice to known beneficiaries at the time the common trust fund was established is persuasive that postal notification at the time of accounting would not seriously burden the plan."

The *Mullane Case* was followed in *Walker* v. *City of Hutchinson,* 352 US 112 (77 S Ct 200, 1 L ed 2d 178), which was an action to condemn the property of the appellant. No notice was given him of the proceeding other than by publication. He sought relief in equity on the ground that such publication, while authorized by the State statute, was not sufficient to satisfy the Fourteenth Amendment requirement as to due process. Commenting on the *Mullane* decision, it was said (pp 115, 116):

"That case establishes the rule that, if feasible, notice must be reasonably calculated to inform parties of proceedings which may directly and ad-

versely affect their legally protected interests. We there called attention to the impossibility of setting up a rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions. We recognized that in some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown.

"Measured by the principles stated in the *Mullane* case, we think that the notice by publication here falls short of the requirements of due process. It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value."

It is conceded in the instant case that in excess of 10,000 notices were sent out to parties owning property assessed for benefits. We think the language used in the controlling decisions of the United States supreme court justify the conclusion that under such circumstances sending notice by mail is a method *reasonably* calculated to apprise each taxpayer to whom the notice is sent of his rights and liabilities. It is equally clear that service by publication in newspapers, and by posting, is not sufficient as a matter of law to afford reasonable notice. Such was our conclusion in *Ridenour* v. *County of Bay,* 366 Mich 225. See, also, *Wisconsin Electric Power Company* v. *City of Milwaukee,* 275 Wis 121 (81 NW2d 298).

The provision of the statute that the failure to send the notice by mail shall not constitute a jurisdictional defect invalidating a tax, if notice shall have been published and posted, is obviously at variance with the requirements of the statute directing the mailing of notice to each taxpayer entitled thereto, and is clearly repugnant to the holdings in the above cited cases. A situation that the legislature presumably did not intend might well result if the mandatory provisions of the statute with reference to the giving of notice by mail may be disregarded. For like reasons the conclusive effect sought to be given to the affidavit of the drain commissioner cannot be sustained. The presumption of the regularity of official action must yield, in order to constitute due process of law, to a showing as to the actual facts. As indicated, however, with the exception of these 2 provisions, we sustain the constitutionality of section 154 of the drain code on the ground that if the conditions therein prescribed are complied with due process of law is had in a situation of the character now before us.

This brings us to the question whether on the record a finding is justified that a notice of the hearing to be held on June 1, 1960, was actually mailed to the plaintiff. Due process of law requires such mailing to be made. The attorney general of the State, who has intervened in the case, makes the following statement in his brief, with which statement we are wholly in accord:

"Due process of law demands that there be a mailing. This is a reasonable method calculated to give notice of the hearing in question. It is only meaningful if the act of mailing is performed."

It was admitted on the hearing of this case in circuit court that there was no one who could say that a notice was actually mailed to plaintiff. The

defendant, who made the statutory affidavit that the notices had been mailed, conceded that he mailed none of the notices himself, nor did he know who actually did mail them. The procedure followed in this connection appears from the testimony and is summarized by counsel for appellant in an uncontroverted statement in his brief as follows:

"When the drain commissioner is required under any of the statutory provisions, to send a notice to taxpayers of any given drainage district, he calls upon the services of the Wayne county bureau of taxation. The boundaries of an established drainage district such as the Sexton-Kilfoil drainage district are on record with the bureau of taxation. The bureau has the names that appear on the general tax rolls. The bureau ascertains the names of taxpayers within the district. Someone in the drain commissioner's office orders the bureau of taxation to prepare 3 lists of such taxpayers and envelopes. The envelopes are to mail the notices to property owners, whatever the notice may be. Someone from the drain commissioner's office picks up the envelopes in cartons. There were over 10,000 envelopes in the Sexton-Kilfoil drain. Depending on the size of the drain, certain employees are assigned to 'stuffing the envelopes.' The envelope is opened up. The notice is inserted. Then the lid is folded back over and placed back in the same cartons so far as possible. A designated employee may receive so many cartons or so many envelopes, which they fill with the notice that is required to be mailed and they are delivered to the mailing department in the City-County building and the mailing department sends them out.

"Each parcel of property bears a code number for general tax purposes. The code number of plaintiff's property was 15Y in Romulus. The list prepared by the bureau of taxation for purposes of sending out notice of the day of review included

International Salt Co., 12841 Sanders avenue, Detroit, Michigan.

"A notice, a copy of which is in pocket of back cover of appellant's appendix (plaintiff's exhibit 1), was placed in each envelope that was sent out to a property owner in the Sexton-Kilfoil drainage district. The defendant did not personally mail to plaintiff any notice that a public meeting would be held by him on June 1, 1960, to review the apportionment of benefits to plaintiff's land. Defendant does not know which employee of his office sent out a letter, containing such notice, to plaintiff. Defendant's attorney admitted he did not know of any definite person who mailed any envelope to plaintiff."

It does not appear that the envelopes after being addressed and the printed notice inserted therein were checked against the list furnished by the bureau of taxation, or by any other method. It appears from the notice that the descriptions of assessed properties were set forth with reference to the townships or cities in which they were situated. Conceivably the notices intended for property owners in the various townships and cities might have been separately handled, checked and mailed by employees who would by such method of procedure have been in position to testify with reference to such checking and mailing. Quite possibly some more practical plan might have been worked out by those familiar with handling notices of the character here involved in order that, in the event of litigation on the point, proof of actual mailing might be available. We realize, of course, that any detailed method of handling the notices where the number to be sent is large involves additional care and labor. However, it seems essential in order to establish that constitutional requirements as to due process of law have been observed that some method to accomplish the result suggested should be worked

out by those to whom the task of preparing and mailing the notices in a case of this character is committed.

In the instant case there is, as before indicated, an absence of proof that any notice was actually mailed to plaintiff. However, mailing was essential to due process of law and to the procedure prescribed by the legislature. Under the circumstances we think that plaintiff is entitled to equitable relief and to that end we remand the case with directions that within 30 days after such remand defendant drain commissioner afford to plaintiff the right to a hearing relating to the assessment against plaintiff's property. In view of the nature of the controversy no costs are allowed.

DETHMERS, KELLY, OTIS M. SMITH, and ADAMS, JJ., concurred with CARR, C. J.

BLACK, J. (*dissenting*). The appealed decree reads in full as follows:

"This cause having come on for a trial on the merits, and having been heard upon the pleadings filed and the proofs made therein, and having been argued by counsel for the respective parties, and the court having found that the statute, PA 1956, No 40, § 154, as amended by PA 1957, No 61 (CLS 1956, § 280.154, as amended [Stat Ann 1960 Rev § 11.1154]), required defendant drain commissioner to give notice to property owners in the Sexton-Kilfoil drainage district, including plaintiff, of the day of meeting of the board of review for review of apportionment of benefits, by first class mail, by publication in a newspaper of general circulation in the community involved, and by posting in at least 5 conspicuous places in such drainage district; and having further found that the said provisions of the statute and the further provision thereof to the effect that the failure to send or to receive such notice by mail

does not constitute a jurisdictional defect nor invalidate such drain proceedings and/or tax, is a proper exercise of legislative power and is constitutional; and having found that the defendant did in fact comply with such statute in the course of the Sexton-Kilfoil drain proceedings; and the court further finding that although plaintiff did not actually receive such notice by mail, nonetheless it is deemed to have received proper notice within the purview of the statute in such case made and provided; and the court having found that the Sexton-Kilfoil drain proceedings were jurisdictionally intact and the plaintiff being deemed to have had proper notice of such proceedings, it may not maintain an action in chancery seeking review thereof; and the court being otherwise fully advised and informed in the premises and having rendered its opinion on the matters involved herein, to which opinion reference may be made for more particularity and shall be considered a part of this decree,

"Now, therefore, it is ordered, adjudged and decreed, that the bill of complaint filed in this cause be, and the same is hereby dismissed, without costs to either party."

Plaintiff has properly invoked the aid of equity to obtain the process which, in the course of these statutory proceedings, was due it by admonition of the Fourteenth Amendment. That admonition is as much a part of the drain code as if written therein for, as said in both reports of *Blythe* v. *Hinckley* (173 US 501, 508 [19 S Ct 497, 43 L ed 783]; 180 US 333, 338 [21 S Ct 390, 45 L ed 557]), "the Constitution, laws and treaties of the United States are as much a part of the laws of every State as its own local laws and constitution." I construe and apply the code accordingly and, guided by the *Mullane* (*Mullane* v. *Central Hanover Bank & Trust Co.*, 339 US 306 [70 S Ct 652, 94 L ed 865]) and *Walker* (*Walker* v. *City of Hutchinson*, 352 US 112

[77 S Ct 200, 1 L ed 2d 178]) *Cases,* hold that this plaintiff has been denied due process as charged in its bill and is therefore entitled to plenary relief from the consequences of notice withheld when adequate notice could and should have been given.

Now I have always supposed that when equity has accepted jurisdiction—of person and subject matter—for any good reason known to her exalted jurisprudence, the chancellor should and does retain jurisdiction to accomplish equity's benign and final purpose; that of providing complete relief in one suit with due determination of the rights and duties of the parties growing out of or connected with the pleaded subject matter. Our latest expression in such regard appears in *Jeffery* v. *Lathrup,* 363 Mich 15, 22.\* There is no disclosed reason why we should relegate plaintiff to another administrative hearing and litigation stemming inevitably therefrom.

I would reverse and remand with direction to proceed with hearing and determination of plaintiff's allegation that the project provides no benefit for its property. Plaintiff should, of course, have costs.

---

\* *Jeffery* refers authoritatively to the collection of principles and citations appearing in *Second Michigan Cooperative Housing Association* v. *First Michigan Cooperative Housing Association,* 358 Mich 252, 256, 257. Having first quoted Pomeroy's enduringly pertinent precepts, our unanimous Court therein reaffirmed allegiance to what was said in *Whipple* v. *Farrar,* 3 Mich 436, 446 (64 Am Dec 99):

"But it has often been held, and in New York and some of the other States, it is regarded as a settled rule, that where a court of chancery has gained jurisdiction of a cause for any purpose of relief, it will retain it, for the purpose of giving full relief. 1 Story Equity Jurisprudence, § 71, note 2, and cases there cited; *Bradley* v. *Bosley,* 1 Barb Ch (NY) 125, 151; see, also, 2 Harris Ch 286.

"This is a rule of such practical utility in promoting the ends of justice—preventing unnecessary suits, saving expense, and avoiding delay, as commends itself strongly to our approbation, and the case under consideration is one where it may well be applied."

This case of International Salt Co. v. Wayne County Drain Commissioner is another case where it—the stated rule of retention of jurisdiction—"may well be applied."

There is no occasion, now, for determination of the question whether, under the statute, proven mailing of a notice constitutes due process. Suppose the notice is mailed but not received by the addressee, through no fault of his own. Is he then precluded from challenging validity of the special assessment of his property? I would carefully refrain from hinting an answer to such question until a specific case requiring an answer either way is before us.

KAVANAGH and SOURIS, JJ., concurred with BLACK, J.